Brian H. Kim  (State Bar No. 215492)
James P. Keenley (State Bar No. 253106)
Emily A. Bolt (State Bar No. 253109)
BOLT KEENLEY KIM LLP
2855 Telegraph Ave., Suite 517
Berkeley, California 94705
Phone: (510) 225-0696
Fax: (510) 225-1095

Jason A. Newfield (*Pro Hac Vice Application Pending*)
FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue - Suite 312
Garden City, New York 11530
Phone: (516) 222-1600
Fax: (516) 222-0513

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT CRISTIANO, | Case No.: 3:21-cv-6142 |
| Plaintiff, | **COMPLAINT (ERISA)** |
| v. | |
| HARTFORD LIFE INSURANCE COMPANY, | |
| Defendant. | |

# INTRODUCTION

1. This case challenges Defendant HARTFORD LIFE INSURANCE COMPANY ("Hartford") termination of Plaintiff Vincent Cristiano's claim for long-term disability ("LTD") benefits under the Oracle America, Inc. ("Oracle America") Long Term Disability Plan (the "Plan"). Plaintiff was and is disabled under the terms of the Plan and entitled to ongoing LTD benefits under the Plan.

# JURISDICTION

2. Plaintiff brings this action for declaratory, injunctive, and monetary relief pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

# VENUE

3. Venue lies in the Northern District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the breaches alleged occurred in this District, and the ERISA-governed plan at issue was administered in part in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within this District.

# INTRADISTRICT ASSIGNMENT

4. This case should be assigned to the San Francisco / Oakland Division because Defendant may be found within this division and the relevant acts and omissions occurred within this division.

# PARTIES

5. At all relevant times, Plaintiff was a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan.

6. At all relevant times, the Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), sponsored by Oracle America, Inc. Hartford was and remains the de facto co-plan administrator and co-claims fiduciary of the Plan. Moreover,

Hartford served as both the insurer and claims administrator of the LTD benefits paid under the Plan.

## **FACTS**

7. At all relevant times hereinafter mentioned, Plaintiff was an employee of Oracle America and was employed as a Principal Sales Consultant.

8. During Plaintiff's employment with Oracle America, and effective January 1, 2009 Defendant Hartford issued Group Long Term Disability policy number GLT-395175 to Oracle America (the "Policy").

9. At all times hereinafter mentioned, said disability policy of insurance was issued for the benefit of certain eligible Oracle America employees in exchange for the payment of premiums by Oracle America and/or the employees.

10. At all times mentioned herein, Plaintiff was an employee eligible for disability benefits and an insured under the Policy issued by Defendant Hartford.

11. The Policy defines the term "Disabled" or "Disability" as: This plan of Long Term Disability Insurance provides You with long term income protection if You become Disabled from a covered Injury, Sickness, Mental Illness, Substance Abuse or Pregnancy. Where used in this contract, the term Disabled or Disability shall mean Total Disability or Partial Disability as defined in the Definitions Section of the Certificate. Are benefits limited for Mental Illness or Substance Abuse? If You are Disabled because of: Mental Illness that results from any cause; Any condition that may result from Mental Illness; Alcoholism; or the non-medical use of narcotics, sedatives, stimulants. Hallucinogens, or any other such substance, then, subject to all other Policy provisions, benefits will be payable: only for so long as You are confined in a hospital or other place licensed to provide medical care or the disabling condition: or when You are not so confined. a total of24 months for all such Disabilities during Your lifetime."

12. The Policy defines the term "Mental Illness" as "Any psychological, behavioral or emotional disorder or ailment of the mind, including physical manifestations of psychological, behavioral or emotional disorders, but excluding demonstrable, structural brain damage."

13. Plaintiff was working for Oracle America as a Principal Sales Consultant, earning a salary of $148,878 annually.

14. On or about May 23, 2017, during the period within which said Policy was in full force and effect, and while Plaintiff was an eligible employee, Plaintiff became disabled within the meaning and pursuant to the terms of said Policy.

15. Plaintiff was subsequently terminated by his employer on May 31, 2017 when the effects of his disability severely and permanently impacted his job performance.

16. Defendant Hartford approved Plaintiff's claim for Long Term Disability benefits by letter dated October 31, 2017 based on his inability to perform his own occupation as a result of Tourette's syndrome and the associated symptoms, restrictions and limitations. Thus, Defendant Hartford acknowledged that Plaintiff suffered a significant incurable neurological illness that prevented him from performing the material and substantial duties of his occupation.

17. Defendant Hartford initiated a return-to-work incentive program and assigned a representative to assist and monitor Plaintiff's progress in attempting to return to work.

18. Plaintiff attempted to return to work on or about January 2018 in a much less demanding position as a Customer Support Specialist until April 10, 2019.

19. Plaintiff suffered from worsening symptoms when he returned to work and was unable to meet the expectations of this job due to his Tourette's Syndrome and the disruptive simple and complex tics, which interfered with his ability to focus and concentrate.

20. Plaintiff faced an enormous amount of work ability challenges that caused an insurmountable amount of issues as a result of his Tourette's Syndrome.

21. As of April 10, 2019, Plaintiff continues to be disabled in that he is unable to perform all of the material and substantial duties of his own occupation as a Principal Sales Consultant or any gainful occupation as defined by the policy.

22. Plaintiff's disability is caused by an incurable neurological condition, Tourette's Syndrome and the associated simple and complex tics, which include near constant facial tics,

head tics, neck tics, eye tics, arm tics, hand tics, mouth tics, vocal tics, focus problems, tinnitus, hearing difficulty, neck pains, and dizziness from cervicogenic vertigo.

23. Plaintiff's simple and complex tics are specifically described by Plaintiff as including: Facial tics that come in a variety of patterns; typically, single eye blinks, movements, and widening that even themselves vary in how they occur; Hand touches to different locations on the face; Contraction and relaxation of facial muscles that result in the appearance of communicative like facial expressions which are typically misinterpreted as a nonverbal communication; Rapid head movements, both side-to-side and up-and-down that appear to be jerky, which sometimes give the appearance of a tremor, and are sometimes severe enough to pull and strain a head or neck muscle; Vocal ticks that are typically guttural, sounding like a form of throat clearing or a grunt; Shoulder shrugging that also is usually confused with nonverbal communication.

24. Plaintiff's complex motor tics include facial grimacing combined with a head twisting, shoulder shrugging, and face touching.

25. After receiving the claim forms, Plaintiff filed a claim, cooperated with Defendant Hartford, provided proper proof of loss, and otherwise complied with the policy terms and conditions regarding his claim.

26. By letter dated August 2, 2019, Defendant Hartford accepted liability for Plaintiff's disability claim under the 'Mental Illness and Substance Abuse Benefits Provision', limiting Plaintiff's claim to 24 months of benefits based on a mental nervous condition.

27. Defendant Hartford advised Plaintiff that it completed a review of his claim for benefits and determined that he did not meet the policy definition of Disability as of August 22, 2019 from a physical condition.

28. Defendant Hartford erroneously claimed that Plaintiff was disabled from any occupation due to a Mental Illness on and after August 22, 2019 and therefore Plaintiff's claim would be subject to the Mental Illness and Substance Abuse Benefits Provision.

29. Despite multiple efforts made by Plaintiff in advising Defendant Hartford that his disability claim is due to a long-standing physical neurological disability, Defendant Hartford continued to require Plaintiff's physicians to provide Attending Physician Statements for Mental Health and Behavioral Functional Ability forms.

30. By letters dated November 11, 2019 and December 6 2019, Plaintiff advised Defendant Hartford that Plaintiff's physicians planned to provide Attending Physician Statements and Functional Ability forms based on his ongoing physical disability as a result of Tourette's Syndrome and simple/complex/motor/non-motor tics.

31. Plaintiff's December 6, 2019 letter included an attachment of a December 21, 2018 email of a conversation he had with Defendant Hartford, advising that his physicians refused to complete mental health forms because he did not have a mental health disorder, nor was he being treated for a mental health disorder.

32. Plaintiff's email specifically stated that he was under the care and treatment of his physicians for a neurological issue not a psychological issue and his condition needed to be appropriately categorized by Hartford.

33. Defendant Hartford responded to Plaintiff's email stating that Plaintiff's providers did not have to complete the Attending Physician Statement for Mental Health claims given his providers did not feel it was relevant to his condition.

34. Defendant Hartford acted in bad faith by requesting forms not relevant to Plaintiff's neurological condition, then confirming these forms did not need to be submitted and then wrongfully closed his claim because Hartford did not receive these forms.

35. Plaintiff continued to suffer from the same condition which Defendant Hartford recognized was impairing and is characterized as a condition without a cure, but failed to consider the ongoing support of Plaintiff's neurological condition and the restrictions and limitations he suffered as a result of this physical condition.

36. Defendant Hartford continued to ignore Plaintiff and his treating physicians and took the position that Plaintiff's neurological condition essentially no longer existed, despite the unwavering and overwhelming support for his physical disability over the course of his claim.

37. Defendant Hartford no longer found Plaintiff disabled from his physical incurable neurological condition, Tourette's Syndrome, after it initially approved and paid his claim based on this condition alone.

38. The Policy requires an insured to apply for Social Security Disability Benefits and provides that should the Covered Person under the LTD plan receive Social Security Disability benefits, then the Covered Person's monthly disability benefit is reduced by the other income received from the Social Security Administration.

39. Defendant Hartford required Plaintiff to apply for Social Security Disability benefits pursuant to the Plan and Policy. Plaintiff received a Notice of Award for Social Security Disability benefits effective October 2019. In reliance on the favorable Social Security Disability decision and ongoing award, Plaintiff permitted Defendant Hartford to reduce Plaintiff's monthly disability benefit by the amount of benefits Plaintiff received from the Social Security Administration.

40. Defendant Hartford's conduct and biased claim handling process are highlighted by accepting the Social Security Disability award in accepting its offset, but failing to consider the findings of the Social Security Administration concluding that Plaintiff is totally disabled. A definition which is far more stringent than the definition of total disability contained in the LTD plan.

41. Despite Plaintiff's continued receipt of Social Security disability, Defendant Hartford refused to continue to pay monthly disability benefits to Plaintiff.

42. Defendant Hartford acted procedurally unreasonable in failing to properly consider the Social Security Disability award.

43. Pursuant to 29 U.S.C. §1133 and the regulations promulgated thereunder (29 C.F.R. §2560.503-1), Plans, their fiduciaries and designees must afford certain rights to participants and

beneficiaries of employee welfare benefit plan claims and appeals of adverse benefit determinations.

44. Plaintiff filed an administrative appeal on December 10, 2019 challenging Defendant Hartford's erroneous determination implicating the mental nervous provision limiting Plaintiff's claim to 24 months of benefits.

45. Plaintiff's appeal outlined Defendant Hartford's procedural irregularities in failing to provide Plaintiff with a full and fair review of his claim including, but not limited to, relying upon the biased opinions of its paid consultants with questionable credibility, who are notoriously employed in the insurance industry as "Professional Consultants", who were hired through a well-known pro-insurance company vendor, conducting paper only reviews of the medical records, manipulating the medical evidence to serve the Defendant Hartford's goal of terminating Plaintiff's claim; failing to conduct a fair or reliable occupational analysis, wherein Defendant Hartford erroneously relied upon the physical demands of a job, discounting all of the cognitive requirements, and by hand-picking a specific consultant to complete a labor market survey in ensuring it would secure a result-oriented report in order to complete an amended self-serving employability analysis of Plaintiff's claim to base its claim determination.

46. By letter dated February 10, 2020, Defendant Hartford denied Plaintiff's appeal and upheld its erroneous determination to keep Plaintiff's claim active and open under the Mental nervous Provision of the policy.

47. Hartford's actions are contrary to the terms of the Plan and California law and have no reliable evidentiary support. Hartford's actions are also contrary to the reports and assessments of all of the doctors who have evaluated and treated Plaintiff. Hartford's determination was based on evidence that is neither reliable nor "substantial," and its determination denied Plaintiff due process of law. In adjudicating Plaintiff's claims, Hartford's actions fell well below the "higher-than-marketplace quality standards" imposed by ERISA according to *Metro. Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2350 (2008).

48. Defendant Hartford's structural conflict of interest pervaded its handling of Plaintiff's claim, resulting in a number of procedural irregularities in its claim handling, including but not limited to:

    (A) failing to acknowledge Plaintiff's treating physician's opinions, choosing to adopt the biased opinions of its paid medical consultants, who never met, treated, evaluated, or examined Plaintiff but merely performed paper reviews of the medical records;

    (B) failing to perform an independent medical examination of Plaintiff when it claimed he no longer suffered from a physical disability;

    (C) relying upon selective portions of the medical records to the exclusion of more persuasive information supportive of Plaintiff's disability;

    (D) ignoring Plaintiff's medically supported subjective evidence of impairment;

    (E) misrepresenting Plaintiff's treating physician's opinions regarding Plaintiff's functional limitations;

    (F) conducted a biased and self-serving occupational analysis that was specifically amended to meet Defendant Hartford's pre-determined goal;

    (G) improperly considering the policy language and definition of the Mental Illness provision in Plaintiff's policy;

    (H) cherry-picking information to support its pre-determined result;

    (I) failing to consider the findings of the Social Security Administration who determined that Plaintiff was disabled under its more stringent provisions, notwithstanding the fact that Defendant Hartford took advantage of the offset provision in the policy to deduct payments from Plaintiff due to Social Security's finding of disability;

    (J) failing to afford Plaintiff a "full and fair" review of his claim as required under ERISA;

    (K) failing to comply with its own claim handling guidelines; and

    (L) other evidence of bias.

49. Defendant Hartford's claim handling resulted in numerous violations of 29 CFR § 2560.503-1, including but not limited to those noted above.

50. Defendant Hartford's claim handling demonstrates a bias against Plaintiff's claim due to its substantial impact on Defendant Hartford's financial situation and prevented Plaintiff from receiving a full and fair review of his claim.

51. As a direct and proximate result of the aforementioned acts of Hartford, Plaintiff suffered damages as outlined below.

52. As the result of the actions of Hartford, and each of them, Plaintiff has been improperly denied benefits under the Plan and the Policy.

53. As a further result of the actions of Hartford, Plaintiff has been required to engage the services of legal counsel for the purpose of obtaining his LTD benefits.

## FIRST CLAIM FOR RELIEF

**[Claim for LTD Benefits Pursuant to ERISA § 502(a)(1)(B) Against Hartford]**

54. Plaintiff incorporates Paragraphs 1 through 18 as though fully set forth herein.

55. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

56. At all relevant times, under the terms of the Plan as set forth in the governing plan instruments, Plaintiff became and remains totally disabled and entitled to LTD benefits under the Plan.

57. By terminating Plaintiff's claim for LTD benefits, and by related acts and omissions, Hartford has violated, and continues to violate, the terms of the Plan and Plaintiff's rights thereunder. Hartford's refusal to pay Plaintiff benefits violates the terms of the Plan, and Hartford's actions in administering Plaintiff's claim and in denying benefits were wrongful and an abuse of discretion. At all material times herein, Hartford failed and refused to honor the Plan and is therefore liable for all benefits due under the Plan.

58. Furthermore, because Hartford's denials occurred after January 1, 2012, any discretionary authority conferred by the Policy on Hartford is null and void under after the

California Insurance Code § 10110.6 and Hartford's termination decision must be decided under a *de novo* standard of review. *See, e.g., Polnicky v. Hartford Life Assur Co.*, 999 F.Supp.2d 1144, 1150 (N.D. Cal. 2013). Moreover, upon Defendant Hartford's claim handling and failure to comply with the ERISA regulations contained in 29 C.F.R. § 2560.503 1 et seq., this Court must review Hartford's termination decision under a *de novo* standard of review.

59. As a proximate result of Hartford's actions, Plaintiff has been deprived of his LTD benefits to which he was and is entitled and has suffered damages as set forth above in paragraphs 15-17. Plaintiff further seeks pursuant to 29 U.S.C. § 1132 (a)(1)(B) a declaration as to his entitlement to future disability benefits, as follows: an injunction prohibiting Hartford from terminating or reducing his LTD benefits until the end of the maximum benefit period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant the following relief:

A. Declare that Hartford violated the terms of the Plan by denying Plaintiff's claim for LTD benefits;

B. Order that Hartford pay Plaintiff's LTD benefits from August 21, 2021, through to the date that judgment is rendered herein, together with prejudgment interest on each and every such payment through to the date that judgment is rendered herein;

C. Declare Plaintiff's right to receive future LTD benefits under the terms of the Plan;

D. Award Plaintiff attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

E. Award prejudgment interest on all benefits owed under the terms of the Plan that have accrued prior to the judgment.

F. Provide such other relief as the Court deems equitable and just.

///

///

Dated:  August 10, 2021

                                                           BOLT KEENLEY KIM LLP

                                      By:  /s/ Brian H. Kim
                                            Brian H. Kim
                                            Attorneys for Plaintiff